## UNITED STATES

v.

## George EVERETT.

## Crim.No. 81–066.

United States District Court,
E. D. Pennsylvania.

June 26, 1981.

Peter F. Vaira, U. S. Atty., E. D. Pa., Judy L. Goldstein, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Warren R. Hamilton, Philadelphia, Pa., for defendant.

### MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

The United States brought defendant George Everett to trial on a two count indictment. Count I alleges that defendant participated in a conspiracy to distribute Methamphetamine, a schedule I non-narcotic controlled substance, in violation of 21 U.S.C. § 846 while count II alleges that he attempted to distribute Phenyl 2 Propanone (P2P), a schedule II non-narcotic controlled substance, also in violation of 21 U.S.C. § 846. On May 22, 1981, a jury acquitted Mr. Everett of the charge stated in count I but convicted him on count II of attempted distribution of P2P.

Now before me is defendant's motion for judgment of acquittal made pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The sole issue presented is whether the conviction for attempt can be sustained given that the substance distributed by Mr. Everett was not P2P or any other controlled substance. After careful consideration of the arguments of and the cases cited by the parties, I have determined that the conviction must be reversed and judgment of acquittal entered.

Viewed in the light most favorable to the government, the facts of this case are as follows. Ralph Horan agreed to sell some methamphetamine and P2P to Donn Jerre Miller, an undercover agent for the Drug Enforcement Administration (DEA). On February 4, 1981, after selling some twelve ounces of methamphetamine to Agent Miller, Mr. Horan was arrested. Upon questioning about the promised P2P, Horan told the DEA agents that it was still in the hands of his source, defendant Everett.

Having agreed to cooperate with the government, Mr. Horan had several telephone conversations with Mr. Everett regarding the purchase of P2P; these conversations were tape recorded by the government. Subsequently, Mr. Horan went to defendant Everett's house and obtained from him a pint of liquid which the defendant claimed to be P2P. DEA agents, who were waiting outside, tested the liquid sample, finding it positive for P2P. Mr. Everett was arrested and five other pints of the liquid were seized from his house.

Mr. Everett made a post-arrest statement to federal agents in which he identified one George Jackson as his source of P2P. He also told them that he believed that Jackson got the P2P from someone called Frank.

Subsequent laboratory tests done by the government revealed that while it looked and smelled like P2P, the liquid given by Everett to Horan and that seized from Everett's house was not P2P or any other controlled substance. At trial, the government chemist testified to these findings.

The original indictment charged Mr. Everett with two counts of distribution of P2P and two counts of distribution of metham-

phetamine in violation of 21 U.S.C. § 841(a)(1) and one count of possession of methamphetamine in violation of 21 U.S.C. § 844. After it was determined that the liquid was not P2P, the government brought a superseding indictment changing the charges to a count for conspiracy with Horan to distribute the methamphetamine sold to Agent Miller and a count for attempted distribution of P2P.

Both the defendant and the prosecution apparently believe that this case turns on whether or not the evidence produced at trial established that Mr. Everett believed, at the time, that the substance he was giving Horan was P2P. Defendant argues that the evidence did not prove such a belief on his part; therefore, it would be legally impossible for him to be guilty of an attempt to distribute P2P. The prosecution contends that the conviction must be sustained because the evidence showed that Mr. Everett believed the substance to be P2P. In the government's view, this case presents an issue of factual impossibility and that is not a defense to an attempt charge.

■ In my charge to the jury, I instructed them that they could not convict the defendant of the P2P charge unless they were convinced beyond a reasonable doubt that Mr. Everett believed the liquid to be P2P at the time he gave it to Mr. Horan. Given their verdict of guilt on count II, the jury apparently found that Mr. Everett believed the liquid to be P2P, and I hold that there is sufficient evidence of record to support such a conclusion.[1] Although I agree with the government on this point, I do not believe that such a finding disposes of the issue presented by this motion for judgment of acquittal.

While the government cites several decisions from other circuits, I must follow *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973), which is the statement of the law on this issue in the Third Circuit. In *Berrigan*, the Court of Appeals reversed the convictions of two well-known opponents of American involvement in the Vietnam War; Father Philip Berrigan and Sister Elizabeth McAlister.[2] Without proper authorization from prison authorities, defendants caused a series of letters to be carried in and out of a federal prison in violation of federal law, 18 U.S.C. § 1791, as augmented by 28 C.F.R. § 6.1.

> Section 1791 provides:
>
> Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years.[3]

Because the prison officials had discovered the mail smuggling scheme and allowed it to continue, with the exception of one count, defendants were charged with and convicted of merely attempting to smuggle the letters without the warden's knowledge and consent.

Defendants argued that because the warden was aware of the smuggling scheme and because his lack of knowledge was an essential element of the crime, it was legally impossible for them to have violated 18 U.S.C. § 1791 and 28 C.F.R. § 6.1. However, the district court found that since the defendants (1) had not been aware of the warden's knowledge; (2) had intended to act unlawfully and (3) had acted in furtherance of their unlawful goal, they were guilty of an attempt.

---

1. For example, the statement given by defendant after his arrest would support a finding that the defendant believed the substance to be P2P. When the agents asked him where he got the P2P, instead of denying that the substance was P2P, Everett gave them information about his source.

2. However, the conviction of Father Berrigan on one count was affirmed.

3. 28 C.F.R. § 6.1 states:

   The introduction or attempt to introduce into or upon the grounds of any federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such federal penal or correctional institution is prohibited.

The Third Circuit declined to follow this line of reasoning. It also rejected the government's argument that the case presented a question of factual impossibility, which generally is not a defense to a charge of attempt. Instead, the Court of Appeals found that the case involved an issue of legal impossibility, which it defined as follows:

> Legal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime. Thus, legal impossibility would apply to those circumstances where (1) the motive, desire and expectation is to perform an act in violation of the law; (2) there is intention to perform a physical act; (3) there is a performance of the intended physical act; and (4) the consequence resulting from the intended act does not amount to a crime. 482 F.2d at 188.

Attempting to distinguish *Berrigan* from this case, the government cites *United States v. Craft*, 419 F.Supp. 1264 (M.D.Pa. 1976), *aff'd* 556 F.2d 569 (3d Cir.) *cert. denied*, 434 U.S. 863, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977). Given the factual setting of *Craft*, however, the analysis found in that decision is not helpful here. Like Father Berrigan and Sister McAlister, Mr. Craft was convicted of attempting to smuggle mail out of a prison in violation of 18 U.S.C. § 1791. While an inmate at Lewisburg Penitentiary, Mr. Craft wrote a letter to someone outside of prison telling her how to bring drugs into the prison. He gave the letter to the prison librarian to post. However, before the letter was sent, a prison mailroom supervisor read it and made photocopies. In *Craft*, the district court judge distinguished his case from *Berrigan* as follows:

> Craft's argument that his attempt to smuggle a letter from Lewisburg was, like Berrigan's, "impossible" because it had the consent of the Warden overlooks what the Court viewed as a crucial factual distinction. From the moment that Berrigan initiated his attempts to smuggle letters out of Lewisburg he could not, despite his intention to do so, violate § 1791 because his smuggling endeavors were sterilized by the Warden's prior knowledge. In contrast, Craft's deeds were tainted *ab initio* with a patina of criminality which persisted until the instant when Poploski decided to mail the original letter while retaining copies. Just prior to Poploski's intervention, *the crime of attempt was not only legally possible, it was legally completed.* In contrast to *Berrigan*, the Warden was never privy to any of the acts which constituted Craft's attempt. Failure to consummate the ultimate crime did not vitiate the fact that Craft had committed the separate, culpable offense of attempt. What Poploski did after the attempt was uncovered is irrelevant and does not decriminalize the Defendant's acts. If the Government's proof in the case had terminated chronologically with Poploski's discovery, the prosecution would have adduced a sufficient case to sustain a conviction against Craft. The mailing of the letter by Poploski, although precluding a conviction for smuggling, did not retroactively dissolve the distinct crime of attempt committed by Craft. 419 F.Supp. at 1266 (Emphasis added.)

█ The government attempts to analogize the instant situation to *Craft*, by arguing that

> Everett 'set in motion' a chain of events by agreeing with Horan to distribute P2P, and then seeking to obtain P2P from Jackson. At the time he agreed with Horan and sought the possible, and indeed highly probable, that he would obtain a genuine controlled substance. The fact that the liquid later turned out to be non-controlled in no way changes the fact that the offense here, like the activity in *Craft*, could have been a crime at the time the defendant took his first illegal steps.

(Government memorandum at 7–8.)

The fatal flaw in this reasoning is that the defendant was not charged with or convicted of a conspiracy with Mr. Horan to distribute P2P. Rather, he was charged with an attempt to distribute; before the crime

**50**

was ever "set in motion" it was impossible because the substance was not P2P.

Similarly, the government's reliance on *United States v. Senatore*, 509 F.Supp. 1108 (E.D.Pa.1981), is misplaced. In *Senatore*, Judge Cahn upheld the conviction of the defendant for a conspiracy to distribute a controlled substance, Quaaludes, even though the pills he sold to government agents were not Quaaludes or any other controlled substance. Crucial to the court's decision was the fact that defendant Senatore was charged with a conspiracy. As Judge Cahn points out, the crime of conspiracy, under both the drug statute and the general criminal conspiracy statute (18 U.S.C. § 371), is complete upon the agreement to do an unlawful act and the commission of an overt act in furtherance of the agreement. The federal criminal statutes dealing with conspiracy are directed at punishing the unlawful agreement as implemented by an overt act. While 21 U.S.C. § 846 covers attempts as well as conspiracies, it is not clear that the statute intends to punish a mere unlawful intent accompanied by an overt act in furtherance thereof. As the Third Circuit observed in *United States v. Berrigan*:

> Congress has not yet enacted a law that provides that intent plus act plus conduct constitutes the offense of attempt irrespective of legal impossibility. 482 F.2d at 190.

For the reasons stated above, I find that the holding and analysis of *U. S. v. Berrigan, supra,* compel the reversal of Mr. Everett's conviction.[4]

---

**4.** Despite the government's protestations to the contrary (government's memorandum at 9, n.4), at least two other Courts of Appeals have interpreted the *Berrigan* decision as precluding a conviction for attempt to distribute if the substance sold is in fact not a controlled substance. *See United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978); *United States v. Oviedo*, 525 F.2d 881, 884–85 (5th Cir. 1976).