**UNITED STATES of America**

v.

**Raymond MARTORANO a/k/a Long John.**

**Crim. No. 82–11.**

United States District Court,
E. D. Pennsylvania.

June 18, 1982.

Louis R. Pichini, Asst. U. S. Atty., Strike Force, Philadelphia, Pa., for government.

Robert F. Simone, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Raymond Martorano ("Martorano") was convicted by a jury of conspiracy to distribute and possess with the intent to distribute phenyl-2-propanone ("P2P"), a schedule II non-narcotic drug controlled substance, in violation of 21 U.S.C. § 846, and of possession with intent to distribute approximately 52 gallons of P2P in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Before the court are Martorano's motions for arrest of judgment, new trial and acquittal. For the reasons discussed below, these motions will be denied.

## I. ARREST OF JUDGMENT

■ Martorano's motion for arrest of judgment, which is identical in substance to his motion for acquittal, alleges no ground for arrest of judgment. Federal Rule of Criminal Procedure 34 provides that judgment shall be arrested if the indictment does not charge an offense or if the court was without jurisdiction of the offense charged. As neither ground is alleged by Martorano, his motion is denied.

## II. NEW TRIAL

Martorano argues three grounds in support of this motion: (1) that the government failed to prove by a preponderance of the evidence independent of the statements of alleged co-conspirators the conspiracy charged and Martorano's participation therein, and therefore that it was error to permit in evidence the statements and actions of Frank Vadino, John Berkery and Marco DiTullio together with exhibits including cash, methamphetamine, photographs and tapes; (2) there was a fatal variance between the conspiracy as charged and the multiple conspiracies shown by the evidence; and (3) the guilty verdicts were contrary to the law and evidence. The third ground was not briefed as required by Local Rule 14 and the court's Order dated May 17, 1982, and might be summarily rejected. However, it too has been considered and is an inadequate basis for new trial.

■ As for the first ground, that the charged conspiracy was not proven by a preponderance of the evidence admissible independent of the co-conspirator rule of the Federal Rules of Evidence, Fed.R.Ev. 801(d)(2)(E), explicit findings of fact were made at trial to sustain the admission of co-conspirators' out-of-court statements. (Notes of Testimony, May 14, 1982, 647–650). The preponderance standard applies,

*Government of Virgin Islands v. Dowling*, 633 F.2d 660 (3d Cir.), *cert. denied*, 449 U.S. 960, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980), and both direct and circumstantial evidence of an illicit association may be considered. *United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Kates*, 508 F.2d 308 (3d Cir. 1975). The statements of Martorano's co-conspirators were admissible; their actions and related exhibits were relevant. Most of the exhibits now complained of were admitted without objection at trial but even if counsel mistakenly assumed that his general objection to statements of alleged co-conspirators pertained to these exhibits, it was not error to admit them in evidence.

■ Finally, the multiple conspiracy ground for a new trial is rejected. The jury was charged on "multiple conspiracy" without objection as to the form of the instruction. The issue of the number of conspiracies involved was clearly presented to the jury. *See, United States v. Camiel*, 519 F.Supp. 1238, 1244 (E.D.Pa.1981). The jury found that the government carried its burden of proving the conspiracy as charged beyond a reasonable doubt. There was substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision that Martorano was guilty. *United States v. Palmeri*, 630 F.2d 192 (3d Cir. 1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981). The testimony of Ronald Raiton ("Raiton") about the October, 1980 meeting of the conspirators, the government's surveillance testimony and the tape recorded conversations provide ample support for the inference of a joint criminal endeavor as charged; thus, *Camiel, supra* is distinguishable. The government proved a relatively simple scheme with few participants. This is not a case such as *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in which there were 32 defendants and eight or more individual conspiracies. For these reasons, Martorano's motion for new trial is denied.

## III. ACQUITTAL

■ In this motion, Martorano re-alleges the co-conspirator hearsay, multiple conspiracy and insufficient evidence grounds asserted in his new trial motion. For the reasons just discussed, these are rejected. It is also alleged that the government's conduct was outrageous and transcended due process. This ground was not briefed per Local Rule 14 and the court's Order dated May 17, 1982. In any event, it is rejected. "... [A] successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." *United States v. Jannotti*, 673 F.2d 578, 607 (3d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 2906, 73 L.Ed.2d 1315, (1982). Here defense counsel did not seek to prove or even argue entrapment and a jury instruction on entrapment was voluntarily withdrawn. Unlike *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), the criminal plan here originated with Martorano. We must exercise "scrupulous restraint" in evaluating law enforcement conduct, *Jannotti, supra* at 607, and cannot find on this record that government conduct regarding Martorano establishes a violation of due process.

Finally, with respect to the possession count, Martorano alleges that "the Government never surrendered dominion and control over the van and the P2P," and that "[t]he evidence further failed to show that the defendant ever had the 'ability' to actually possess the P2P." Defendant's Memorandum of Law at 4.

■ "Possession" within the meaning of 21 U.S.C. § 841 may be actual or constructive. *United States v. Raper*, 676 F.2d 841 (D.C.Cir.1982); *United States v. Crippen*, 459 F.2d 1387 (3d Cir. 1972). The government sought to prove constructive possession only. Constructive possession may be established by a showing of ownership, dominion or control over the contraband, *Crippen, supra* at 1388, or over the vehicle in which the contraband was concealed. *United States v. Moreno*, 649 F.2d 309 (5th Cir. 1981). Of course, a jury may

rely on circumstantial as well as direct evidence of the requisite dominion and control. *Raper, supra,* 676 F.2d at 847; *United States v. Jones,* 492 F.2d 239 (3d Cir. 1974).

■ There was substantial evidence that: (1) Martorano arranged with Raiton to have a van containing 52 gallons of P2P parked near Rittenhouse Square for purposes of its illicit transfer; (2) in exchange for $104,000, Martorano was given and he held the key to the van containing the P2P; (3) Martorano handed the key to a man he knew would be present so that the van could be inspected and then driven away; (4) Martorano's associate inspected the van, got into the driver's seat and was subsequently seized at or in the van; and (5) Martorano arrived at the scene, observed the seizure, did not stop but drove quickly away. From these facts, a jury might reasonably infer constructive possession.

■ Merely arranging the deal may manifest sufficient control of contraband to support a finding of constructive possession. *Raper, supra,* 676 F.2d at 848. The inference of possession in Martorano's case was far greater. It was Martorano's idea that Raiton rent and park a van containing the P2P near the park at which money was to change hands. Arrangement for the transportation of contraband by another may also show constructive possession. *See, United States v. Gloria,* 494 F.2d 477 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974). He possessed keys to the vehicle containing the contraband. That alone has been held to support a finding of constructive possession. *United States v. Martinez,* 588 F.2d 495 (5th Cir. 1979); *see, United States v. Grant,* 545 F.2d 1309 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977) (keys to room); *United States v. Giles,* 536 F.2d 136 (6th Cir. 1976) (keys to suitcase).

■ It was Martorano's agent who used the keys to enter and inspect the van and get behind the wheel, and the jury might infer that but for the government's seizure of that vehicle, that agent would have driven the van away. Constructive possession need not be exclusive but may be shared with others. *United States v. Ocanas,* 628 F.2d 353 (5th Cir. 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981). It follows that constructive possession may be inferred from one's ability to produce the contraband through an agent. *Raper, supra,* 676 F.2d at 847; *United States v. Grayson,* 597 F.2d 1225 (9th Cir.), *cert. denied,* 444 U.S. 875, 100 S.Ct. 157, 62 L.Ed.2d 102 (1979); *United States v. De Lazo,* 497 F.2d 1168 (3d Cir. 1974); *Crippen, supra* at 1388.

■ Constructive possession by Martorano is not precluded because the government had rented and parked the vehicle. *See, United States v. Gomez-Rojas,* 507 F.2d 1213, 1222 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975) (defendant entered government rented car and moved it; convictions of possession with intent to distribute and conspiracy affirmed). The jury might infer that the agent of Martorano who entered the van would have driven it away, followed by Martorano, according to Martorano's plan. The van was not moved, because the government did not allow a "getaway." Martorano contends that he had no ability to possess the van or its contents because the government never surrendered dominion. The defense of impossibility, usually considered in the context of the law of criminal attempt and conspiracy, may refer to either impossibility of law or impossibility of fact. *See,* W. LaFave and A. Scott, *Criminal Law* 438–446, 474–476 (1972).

There is no legal impossibility with regard to the element of possession. "Legal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime." *United States v. Berrigan,* 482 F.2d 171, 188 (3d Cir. 1973); *United States v. Everett,* 520 F.Supp. 46 (E.D.Pa.1981). Receiving a key to the van in exchange for $104,000, having that key in one's possession, and then giving that key to an associate, or agent, who enters and inspects the van with the present ability to drive it away constitutes constructive pos-

session. These completed acts make out the possession element.[1]

Nor is the defense of factual impossibility with respect to possession applicable. " . . . [F]actual impossibility is said to occur when extraneous circumstances unknown to the actor or beyond his control prevent consummation of the intended crime." *Berrigan, supra,* at 188. Factual impossibility is inapplicable because the actions upon which an inference of constructive possession is based—possession of the key, giving the key to an agent, having the agent enter the truck—were all successfully consummated. *See generally, United States v. Green,* 511 F.2d 1062, 1072 (7th Cir.) *cert. denied,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975) (attempt). Martorano did have the *ability* to reduce the P2P to his control through his agent's use of the key obtained from Raiton. He was prevented from doing so only because government agents seized the van as his agent took actual possession. This seizure terminated Martorano's brief dominion over the contraband but that does not mean such dominion never existed. Martorano claims that the reduction of the P2P to his *actual* possession was impossible. In fact, it was improbable in view of the government surveillance of the van. The acts of the government to thwart Martorano's scheme did make resale of the P2P factually impossible. *See, United States v. Frazier,* 560 F.2d 884 (8th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). However, it was possession with intent to distribute, and not the separate offense of distribution, of which Martorano was found guilty.[2] *See, United States v. Gomez,* 593 F.2d 210 (3d Cir.), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979).

Viewing the evidence in the light most favorable to the government, *United States v. Pratt,* 429 F.2d 690 (3d Cir. 1970), we find that there was sufficient evidence for the jury to find Martorano guilty as charged beyond a reasonable doubt. For these reasons, Martorano's motion for acquittal is denied.

---

1. Defendant does not contend that he was unaware of the van's contents. *See, United States v. Glasgow,* 658 F.2d 1036 (5th Cir. 1981) (reversed a conviction for possession because there was no evidence that the defendant was aware that the suspect airplane contained contraband or that he had control over the airplane).

2. Martorano does not, indeed could not, contend that the van did not exist or that the containers in the van contained non-controlled substances. That kind of fact impossibility might preclude conviction on a possession charge, *United States v. Heng Awkak Roman,* 356 F.Supp. 434, 436 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974), or a distribution charge, *United States v. Everett,* 520 F.Supp. 46, 49–50 (E.D.Pa.1981); *see generally, United States v. Jannotti,* 673 F.2d 578, 591 (3d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (impossibility a defense to an element of jurisdiction).